**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

MARIA ORTIZ,
on behalf of the Estate of
JORGE E. RIVERA, and on
behalf of J.R., a minor,
    Plaintiffs,

v.

THE CITY OF CAMDEN, TROOPER
DENNIS QUINN, INVESTIGATOR
PETER LONGO, and INVESTIGATOR
THOMAS DINUNZIO,

    Defendants.

CIVIL NO. 11-2300(NLH)(AMD)

**OPINION**

**APPEARANCES:**

RYAN MARC LOCKMAN
MARK B. FROST
MARK FROST & ASSOCIATES
PIER 5 AT PENN'S LANDING
7 NORTH COLUMBUS BOULEVARD
PHILADELPHIA, PA 19106
    Attorneys for plaintiffs

VINCENT J. RIZZO, JR.
OFFICE OF THE NJ ATTORNEY GENERAL
RJ HUGHES JUSTICE COMPLEX
25 MARKET STREET
PO BOX 112
TRENTON, NJ 08625-0112
    Attorney for New Jersey State Police and Dennis Quinn

JOHN C. CONNELL
JOHN PATRICK KAHN
ARCHER & GREINER P.C.
ONE CENTENNIAL SQUARE
HADDONFIELD, NJ 08033
    Attorneys for the Camden County Prosecutor's Office, Peter
    Longo, and Thomas DiNunzio

JAMES H. WALLER
611 WHITE HORSE PIKE
HADDON HEIGHTS, NJ 08035
     Attorney for the City of Camden


**HILLMAN**, District Judge

     This case involves claims of excessive force and deliberate indifference to a serious medical need by law enforcement officers.  Presently before the Court are the motions of certain defendants[1] for summary judgment in their favor.  For the reasons expressed below, defendants' motions will be granted in part and denied in part.

<u>BACKGROUND</u>

     On April 22, 2009, at the corner of 4th and York Streets in Camden, New Jersey, Jorge E. Rivera was approached by a person who wanted to buy drugs from him.  At that time, defendants Dennis Quinn, a New Jersey State Trooper, Peter Longo, a Camden County Prosecutor's Office (CCPO) Investigator, and Thomas DiNunzio, also a CCPO investigator, were on patrol as part of the Joint Camden Task Force/High Intensity Drug Trafficking Area task force.  The officers observed the impending drug sale and approached Rivera and the other individual.  When the officers neared Rivera, he attempted to swallow a small plastic bag

_____

[1] Defendant City of Camden has not moved for summary judgment.

filled with heroin.  The officers were aware that Rivera swallowed the bag and repeatedly yelled for him to spit it out. After a struggle with the officers, Rivera became unresponsive. Emergency responders came to the scene and attempted to revive Rivera.  He was transferred to the hospital, where he was pronounced dead.  The coroner listed Rivera's cause of death as asphyxiation with a secondary cause of heroin toxicity.

The parties' versions of what transpired between when the officers first approached Rivera and when he later died differ significantly.  Plaintiff, Maria Ortiz, who is the administrator of Rivera's estate and the mother of Rivera's minor son, plaintiff, J.R., claims that the officers grabbed Rivera, shoved him to the ground, and kicked and punched him, while Rivera was impassive and not resisting.  Plaintiff[2] claims that even after the officers handcuffed and restrained Rivera, the officers continued to kick and punch Rivera's head and body.  During this encounter, Rivera began to choke on the bag, which had become lodged in his throat, and plaintiff claims that the officers knew he was choking and unable to breathe, but they continued to beat him nevertheless.  Plaintiff claims that even when the officers realized something was wrong with Rivera, they did not

---

[2] The Court will refer to Maria Ortiz as plaintiff.

implement CPR themselves, and instead called for the incorrect medical response team (Basic Life Support rather than Advanced Life Support).  When the BSL response team arrived, none of the officers told the technicians that Rivera had put a plastic bag in his mouth.  Plaintiff claims that critical omission wasted precious time during which no oxygen flowed to Rivera's brain and when the bag was finally pulled out of his throat it was too late.

In contrast to plaintiff's version of events, defendants contend that Rivera, who was 5'8" and over 300 pounds, resisted arrest and swung and kicked at the officers.  Defendants contend that Rivera was lying still after he was handcuffed, but they saw him breathing, although it was labored.  Defendants state that they called for the BLS response team because they had thought Rivera had ingested the drugs and did not realize that he had the bag stuck in his throat.  When the ALS response team arrived, only then did it become apparent to the BLS team that a bag was stuck in Rivera's throat when one of the technicians saw the bag and pulled it out.  At that point, Rivera had gone into cardiac arrest and soon thereafter died on the way to the hospital.

Plaintiff claims that defendants violated Rivera's Fourth Amendment rights, and the New Jersey Civil Rights Act, by using

4

excessive force to effect his arrest.  Plaintiff also claims
that defendants violated Rivera's Fourteenth Amendment rights,
and the New Jersey Civil Rights Act, by being deliberately
indifferent to his serious medical need.  Plaintiff also asserts
claims against defendants for assault and battery and wrongful
death.

Defendants have moved for summary judgment on all of
plaintiff's claims.  Defendants argue that they are entitled to
qualified immunity on plaintiff's constitutional and New Jersey
Civil Rights Act claims, and that plaintiff's state law claims
are barred by the New Jersey Tort Claims Act.  Plaintiff has
opposed defendants' motion as to these claims.[3]

## DISCUSSION

### A.   Jurisdiction

Plaintiff has brought her claims pursuant to 42 U.S.C. §
1983, as well as pursuant to New Jersey state law.  This Court
has jurisdiction over plaintiff's federal claims under 28 U.S.C.

---

[3] Plaintiff had advanced several other claims which are also the
subject of defendants' summary judgment motion.  In her
opposition to defendants' motion, plaintiff concedes the
dismissal of all her claims except for: (1) her constitutional
violation claims for violations of the Fourth and Fourteenth
Amendments, brought pursuant to 42 U.S.C. § 1983, against the
officer defendants in their individual capacities, (2) her New
Jersey Civil Rights Act claims, and (3) her state law claims for
assault and battery and wrongful death.

§ 1331, and supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367.

> **B.   Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir.

2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C.  Analysis**

**1.  Constitutional violation claims**

For plaintiff's claims against the individual defendants acting in their personal capacity, the qualified immunity doctrine governs the analysis.  "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  Reichle v. Howards, --- U.S. ----, ----, 132 S. Ct. 2088, 2093

(2012).  In order to determine whether a government official is entitled to qualified immunity, two questions are to be asked: (1) has the plaintiff alleged or shown a violation of a constitutional right, and (2) is the right at issue "clearly established" at the time of the defendant's alleged misconduct? Pearson v. Callahan, 555 U.S. 223, 236 (2009).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first."  Id.  It is the defendant's burden to establish entitlement to qualified immunity.  Kopec v. Tate, 361 F.3d 772 (3d Cir. 2004).

With regard to plaintiff's excessive force claim, in determining whether excessive force was used, the Fourth Amendment's "objective reasonableness" test is applied.  Sharrar v. Felsing, 128 F.3d 810, 820–21 (3d Cir. 1997) (citing Graham v. Connor, 490 U.S. 386, 396 (1989)).  The objective reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id. (relying on Graham, 490 U.S. at 396; Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995)).  "Other

8

relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Id.

For plaintiff's claim that defendants were deliberately indifferent to his serious medical need by not providing him with the proper medical treatment in a timely manner, the Eighth Amendment Cruel and Unusual Punishments Clause does not apply until an inmate has been both convicted of and sentenced for his crimes.  Instead, a detainee, such as Rivera, can bring a deliberate indifference claim against a state actor pursuant to the Fourteenth Amendment.  Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012).  Although a detainee may be entitled to greater protection than a convicted inmate, "it is well established that, under the Constitution's guarantees of due process, an unsentenced inmate is entitled, at a minimum, to no less protection than a sentenced inmate is entitled to under the Eighth Amendment."  Id. (citation, quotation marks and alterations omitted); see also Groman v. Township of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995) ("Failure to provide medical care to a person in custody can rise to the level of a

constitutional violation under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs."); Del Tufo v. Township of Old Bridge, 685 A.2d 1267, 1272 (N.J. 1996) ("The police's duty of care to an arrestee requires the exercise of reasonable care to preserve the life, health, and safety of the person in custody.").

Thus, in assessing plaintiff's deliberate indifference claim in this case, the Court will apply the standard used for assessing an inmate's deliberate indifference claim:

> For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." Rouse v. Plaintier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). We have found deliberate indifference where a prison official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." Rouse, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not

trigger constitutional protections. <u>Eslelle v. Gamble</u>, 429 U.S. 97, 105-06(1976).

<u>Pierce v. Pitkins</u>, 520 F. App'x 64, 66 (3d Cir. 2013); <u>see also</u> <u>Mantz v. Chain</u>, 239 F. Supp. 2d 486, 504 (D.N.J. 2002) (internal quotation marks omitted) ("This standard is in effect a two-pronged test requiring that plaintiff prove: (1) that his medical needs were objectively serious and (2) that defendant exhibited deliberate indifference to those needs.").

Even though the determination of whether an officer acted objectively reasonably or made a reasonable mistake of law, and is thus entitled to qualified immunity, is a question of law that is properly answered by the court, not a jury, the Third Circuit has recognized that a judge should not decide the objective reasonableness issue until all the material historical facts are no longer in dispute. <u>Curley v. Klem</u>, 499 F.3d 199, 211, 211 n. 12 (3d Cir.2007). To do this, "[a] judge may use special jury interrogatories, for instance, to permit the jury to resolve the disputed facts upon which the court can then determine, as a matter of law, the ultimate question of qualified immunity." <u>Id.</u> In other words, "[w]hen the ultimate question of the objective reasonableness of an officer's behavior involves tightly intertwined issues of fact and law, it may be permissible to utilize a jury in an advisory capacity,  .

. . but responsibility for answering that ultimate question remains with the court." Id.

In this case, the Court must deny summary judgment and employ the special interrogatory procedure for the jury to resolve the disputed facts regarding plaintiff's excessive force and deliberate indifference claims.  After the Court's review of all the evidence in the record, including a video that captured the latter part of the incident, it is clear that disputed facts abound as to: (1) Rivera's physical conduct toward the officers while being apprehended and handcuffed, (2) the officers' use of force to effect Rivera's apprehension, (3) Rivera's condition on the ground, (4) the officers' awareness of Rivera's progressive unresponsiveness due to his positioning and swallowing of the plastic bag of drugs, (5) the timing of the officers' call for medical assistance for Rivera, (6) the officers' decision to call BLS instead of ALS, and (7) the officers' failure to tell the first responders that Rivera had tried to swallow a bag of drugs.[4]

---

[4] To refute the "knowledge of substantial risk of serious harm" prong of plaintiff's deliberate indifference claim, defendants argue that there was no way for them to know that the bag had become stuck in Rivera's throat.  They also argue that he inflicted this "serious harm" on himself.  The disputed facts regarding the circumstances of the entire incident must be resolved by a jury before the Court can consider the import of Rivera's own actions in relation to the reasonableness of the

Whether the officers acted in an objectively reasonable manner in their use of force on Rivera and in their response to Rivera's serious medical needs – and are therefore entitled to qualified immunity[5] - can only be determined by the Court after a jury resolves those seven factual disputes, among other factual issues presented by the parties' evidence.  This course is particularly necessary in this case, where Rivera cannot provide his own account of what happened.  See, e.g., Tuite v. New Jersey, 2014 WL 5035707, *5 (D.N.J. 2014) (stating that because the alleged victim of excessive force by a police officer died as a result of the use of force, and therefore could not testify on his own behalf, the court was "particularly cognizant" of the duty "to examine all the evidence in the record . . . to determine whether the officer's story is internally consistent and consistent with other known facts") (citing Tofano v. Reidel, 61 F. Supp. 2d 289, 301 (D.N.J. 1999) (Lamont v. New Jersey, 637 F.3d 177, 184 (3d Cir. 2011) ("Even where an officer

officers' knowledge of his condition.  Ultimately, the issue is not whether the medical need was self-inflicted but whether the officers had knowledge of the condition and the severity of it, and were deliberately indifferent.

[5] The parameters of the constitution's prohibition of excessive force and deliberate indifference are firmly established.  Thus, the only issue for the Court to ultimately determine is whether, as a matter of law, defendants acted objectively reasonably with regard to those clearly established rights.

13

is initially justified in using force, he may not continue to use such force after it has become evident that the threat justifying the force has vanished.")) (other citations omitted).

Consequently, defendants' motions for summary judgment on plaintiff's Fourth Amendment and Fourteenth Amendment violation claims must be denied.  For the same reasons, defendants' motions with regard to plaintiff's New Jersey Civil Rights Act claims must also be denied.  Martin v. Unknown U.S. Marshals, 965 F. Supp. 2d 502, 548 (D.N.J. 2013) ("[T]he New Jersey Civil Rights Act is interpreted analogously to 42 U.S.C. § 1983.").

### 2.   State law claims

Plaintiff has advanced New Jersey state law-based claims against defendants for assault and battery and wrongful death. The three defendants have moved for judgment on plaintiff's assault and battery claims by arguing that they are immune from suit under New Jersey's Tort Claims Act (NJTCA) because they acted in good faith in the administration of their law enforcement duties.  The CCPO defendants have also moved to dismiss plaintiff's assault and battery claim on the basis that plaintiff failed to comply with the NJTCA notice requirement. With regard to plaintiff's wrongful death claim, which is not subject to the NJTCA, defendants contend that plaintiff cannot

14

prove that Rivera's death was a result of a wrongful act by defendants.

The NJTCA provides, "No action shall be brought against a public entity or public employee under this Act unless the claim upon which it is based shall have been presented in accordance with the procedures set forth in this chapter." N.J.S.A. 59:8-3. A tort claim notice "must be served upon the public entity within 90 days of the accrual of the claim, and failure to do so will forever bar the claimant from recovering against a public entity or public employee." N.J.S.A. 59:8-8. The accrual date under the NJTCA is generally the date on which the alleged tort is committed. Beauchamp v. Amedio, 751 A.2d 1047, 1050 (N.J. 2000).

Under the NJTCA, "A public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment." N.J.S.A. 59:3-3. The NJTCA strips a public employee of any immunity, however, if that employee is found to have engaged in "willful misconduct." N.J.S.A. 59:3-14(a).

As a primary matter, the notice provision of the NJTCA for plaintiff's claims against the CCPO investigators was satisfied. On July 8, 2009, counsel for Rivera's mother, who is not a

15

plaintiff in this case, served a notice of tort claim on the
City of Camden, the New Jersey Attorney General, and the County
of Camden, stating that these entities, and their officer
employees, were responsible for the death of Rivera.  Defendants
contend that this notice is deficient because service on the
County does not provide notice on the CCPO.  Defendants point
out that the County cannot be held liable for the actions of
CCPO officers because the CCPO is an agent of the state.  In
prior briefing in support of their earlier motion to dismiss,
the defendants also pointed out that the CCPO investigators were
deemed to be officers of the state, rather than employees of the
County.  (See Docket No. 69 at 9 n.2, citing Wright v. State,
169 N.J. 422 (2001) (citing N.J.S.A. 2A:158-4; N.J.S.A. 52:17B-
106).)

The Court agrees with defendants that notice on the County
does not serve to provide notice on the CCPO since the County is
not responsible for the CCPO investigators.  The Court finds,
however, that the tort claim notice satisfies the NJTCA because
it was served on the state of New Jersey, for which the CCPO
investigator defendants act as agents.  See Wright v. State, 778
A.2d 443, 462 (N.J. 2001) ("The legislative delegation, in
combination with the Attorney General's supervisory authority
and power to supersede, demonstrates that at its essence the

county prosecutors' law enforcement function is clearly a State function.  Moreover, . . . the county prosecutor's law enforcement function is unsupervised by county government or any other agency of local government, but remains at all times subject to the supervision and supersession power of the Attorney General.  Because law enforcement is a basic State function, and because county prosecutors are uniquely subject at all times to the Attorney General's statutory power to supervise and supersede them, we are persuaded that it is appropriate and consonant with legislative intent to construe the vicarious liability provisions of the TCA as imposing vicarious liability on the State for the tortious actions of county prosecutorial employees in the performance of their law enforcement duties.").  Relatedly, defendants do not provide any law to invalidate this notice simply because the plaintiff and her counsel is different from the claimant on the notice and her counsel who served it.  Therefore, the notice satisfies the requirement that a public entity (the CCPO by way of the New Jersey Attorney General's Office) be put on notice about the claim upon which an action will be based (Rivera's death).

Next, with regard to defendants' availment of the "good faith" immunity provision of the NJTCA, whether defendants acted in good faith cannot be determined at this time for the same

reasons as plaintiff's constitutional violation claims.  This is because the same "objective reasonableness" standard that is used to determine whether a defendant enjoys qualified immunity from actions brought pursuant to 42 U.S.C. § 1983 is used to determine questions of good faith arising under N.J.S.A. 59:3-3.  See Mantz v. Chain, 239 F. Supp. 2d 486, 507-08 (D.N.J. 2002) (citing Lear v. Township of Piscataway, 566 A.2d 557 (N.J. Super. Ct. App. Div. 1989)).  Furthermore, N.J.S.A. 59:3-14(a) strips a public employee of any immunity if that employee is found to have engaged in "willful misconduct."   Willful misconduct is "the commission of a forbidden act with actual (not imputed) knowledge that the act is forbidden . . . . [I]t requires much more than an absence of good faith and much more than negligence."  PBA Local No. 38 v. Woodbridge Police Dep't, 832 F. Supp. 808, 830 (D.N.J. 1993) (internal quotations omitted)).  Because there exists a genuine issue of material fact regarding whether defendants engaged in willful misconduct, the Court cannot determine as a matter of law whether the NJTCA shields them from liability for their interaction with Rivera.

Finally, plaintiff's wrongful death claim may also proceed.  Under the Wrongful Death Act, N.J.S.A. 2A:31-1 to -6, the heirs of a person who has died by virtue of "a wrongful act, neglect or default" may assert a claim for their "pecuniary injuries,"

N.J.S.A. 2A:31-1, -5.  Because disputed facts exist as to whether Rivera's death was caused by "a wrongful act, neglect or default," summary judgment cannot be entered in defendants' favor on plaintiff's wrongful death claim.

## CONCLUSION

For the reasons expressed above, the following claims against defendants Longo, DiNunzio, and Quinn may proceed:  (1) plaintiff's constitutional violation claims for violations of the Fourth and Fourteenth Amendments, brought pursuant to 42 U.S.C. § 1983, against the officer defendants in their individual capacities, (2) plaintiff's New Jersey Civil Rights Act claims, and (3) plaintiff's state law claims for assault and battery and wrongful death.  Summary judgment is granted as to plaintiff's claims against the New Jersey State Police, plaintiff's claims against defendants acting in their official capacities, and plaintiff's conspiracy claim.

An Order will be entered.


Date:  __June 8, 2015__                    ___s/ Noel L. Hillman__
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.


19